BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE: CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST LITIGATION | : : : : : MDL DOCKET NO. |

**BRIEF IN SUPPORT OF SOUTHERN DISTRICT OF INDIANA PLAINTIFFS' MOTION TO TRANSFER CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST CASES TO THE SOUTHERN DISTRICT OF INDIANA FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), the Southern District of Indiana Plaintiffs[1] respectfully submit this Memorandum of Law in support of their Motion to transfer two private crop protection products loyalty program antitrust actions pending in the Middle District of North Carolina to the Southern District of Indiana for coordinated or consolidated pretrial proceedings with the eight cases currently pending in that District and the Honorable Richard L. Young, who was assigned the low number crop protection loyalty program antitrust case.

---

[1] Bradley Day Farms; Chuck Day Farms; Danny Day, Jr. Farms; Danny Day, Jr. & Son Farm Partnership; Shelby Farms, LLC; Hanna Farms, LLC; Choctaw Farms, LLC; G&P Farms Partnership; M and M Farms Partnership; Brick Farms, Inc.; Scott Day Farms; and HYS Farms, LLC (the "Indiana Plaintiffs").

{00234123 }                                                  1

## I. INTRODUCTION

Ten private civil antitrust class actions (the "Actions") have been filed in two Districts alleging that major manufacturers of crop protection products (pesticides)[2] used loyalty programs to illegally foreclose market entry by generic pesticide competition at the major distributors. All requirements for transfer are met. The Actions involve common questions of fact about the creation, implementation, purpose, and effect of so-called loyalty programs used by Defendant Syngenta entities ("Syngenta"), Corteva, Inc. ("Corteva"), and BASF entities ("BASF") with major United States distributors and retailers. All of the Plaintiffs allege that the programs were designed to and did hobble competition from a number of generic crop protection products. Each one of the Actions challenges the legality of the loyalty programs under federal antitrust law. The Plaintiffs in all the Actions seek class action status, although the class definitions and periods in the cases filed in the Middle District of North Carolina differ from (and are subsumed within) the class definitions alleged in the Indiana Plaintiffs' complaints.

As set forth herein and in the Motion, all the requirements for §1407 centralization are present. Establishing a crop protection products loyalty program antitrust litigation MDL in the Southern District of Indiana would thus further the goals of the multidistrict litigation statute by promoting the just, convenient, and efficient conduct of the Actions.

## II. BACKGROUND

As of the time of the filing of the Motion there are ten private civil antitrust class actions pending in two Districts. Eight of the actions are pending in the Southern District of Indiana, where Defendant Cortiva has its headquarters. The other two actions are pending in the Middle

---

[2] The word "pesticides" includes insecticides, herbicides, and fungicides.

{00234123 } 2

District of North Carolina. All of the Actions assert claims under the federal antitrust laws and challenge the legality of the Defendant manufacturers' loyalty programs for their crop protection products.

### A. The Southern District of Indiana Actions.

The Indiana Plaintiffs brought seven of the eight actions pending in the Southern District of Indiana. These lawsuits allege that Syngenta, Corteva, and BASF created and implemented crop protection loyalty programs with major United States distributors and retailers, such as Defendants Nutrien AG Solutions ("Nutrien") and Helena Agri-Enterprises ("Helena"), to artificially maintain monopolies in a variety of crop protection products by excluding generic competition from the market.

The Indiana Plaintiffs allege that Syngenta, Corteva, and BASF required major distributors and retailers such as Nutrien and Helena to limit their sales of competing generic products to some small percentage of their overall sales of designated pesticides in order to receive payments under the programs. These strict limitations had the purpose and effect of excluding generic competition from the market by effectively barring it at the primary point of entry for selling all crop protection products to growers—the major pesticide distributors and retailers. Indeed, the eight largest distributors and associated retailers collectively sell over 80% of the crop protection products sold to growers in the United States. The purpose and effect of the loyalty programs was to exclude generic competition, which allowed Syngenta, Corteva, BASF and their distributors and retailers to artificially maintain higher prices for pesticides after patent expiration than they would have been able to in the absence of the programs.

Indiana Plaintiffs allege that because of the loyalty programs, the Defendants overcharged the Indiana Plaintiffs and classes of all similarly situated purchasers for pesticides

that contain fourteen active ingredients. The Indiana Plaintiffs assert claims under Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act on behalf of the following three classes:

> All persons or entities in the United States that purchased azoxystrobin, mesotrione, metolachlor, fomesafen, paraquat, or lambda cyhalothrin, or any crop protection product containing azoxystrobin, mesotrione, metolachlor, fomesafen, paraquat, or lambda cyhalothrin directly from Syngenta, or any distributor or retailer participating in Syngenta's Loyalty Program for such active ingredients, beginning January 1, 2004, until the effects of the unlawful conduct cease (the "Syngenta Class Period");

> All persons or entities in the United States that purchased rimsulfuron or oxamyl, or any crop production products containing rimsulfuron or oxamyl, directly from Corteva or any distributor or retailer participating in Corteva's Loyalty Program for such active ingredients, beginning January 1, 2004, until the effects of the unlawful conduct cease (the "Corteva Class Period"); and

> All persons or entities in the United States that purchased Boscalid, F500, Glufosinate ammonium, Imazamox, or Pendimethalin, or any crop production products containing them, directly from BASF or any distributor or retailer participating in BASF's Loyalty Program for such active ingredients, beginning January 1, 2004, until the effects of the unlawful conduct cease (the "BASF Class Period").

An eighth action, *Jenkins*, was filed in the Southern District of Indiana against Syngenta and Corteva, as well as distributors and retailers Nutrien and CHS Inc., based on the same underlying conduct described above. *Jenkins v. Corteva, Inc., Syngenta Crop Protection AG, et al., CHS Inc., and Nutrien AG Solutions, Inc.*, C.A. No. 1:22-cv-01976 (S.D. Ind.) ("*Jenkins*"). *Jenkins* was the first filed crop protection loyalty program class action and is pending before the Honorable Richard L. Young. The *Jenkins* case alleges violations of Sections 1 and 2 of the Sherman Act by Defendants and seeks certification of a class defined as follows:

> All persons or entities in the United States that purchased CPPs [Crop Protection Products] containing rimsulfuron, oxamyl, or acetochlor, or CPPs containing azoxystrobin, mesotrione, metolachlor, or s-metolachlor, directly from CHS, Nutrien, or any

>other wholesaler or retailer that was subject to a loyalty program with Syngenta or Corteva during the period beginning at least as early as January 1, 2017 until such time as the anticompetitive conduct alleged herein has ceased (the "Class Period"). Excluded from the Class are (a) Defendants and their subsidiaries, affiliate entities, and employees, and (b) all federal or state government entities or agencies.

Six of the Indiana Plaintiffs' cases were initially assigned to the Honorable Jane E. Magnus-Stinson, and one to the Honorable James P. Hanlon. Because Judge Young was assigned the first filed pesticides loyalty program case, Indiana Plaintiffs have filed motions in each of their cases for transfer intra-district to Judge Young.

### 2. The Middle District of North Carolina Actions.

Two related cases based on the same loyalty program conduct described above have been filed in the Middle District of North Carolina against Syngenta and Corteva.[3] These cases are pending before the Honorable Thomas D. Schroeder. Plaintiffs in these cases claim that the loyalty programs violate Sections 1 and 2 of the Sherman Act, as well as various state laws. Both actions are brought on behalf of:

>All persons or entities who, since January 1, 2017, and continuing through the present (the "Class Period"), purchased pesticides in the United States containing the active ingredients azoxystrobin, mesotrione, metolachlor, rimsulfuron, oxamyl, or acetochlor.

The Federal Trade Commission and ten states also filed an action against Syngenta and Corteva in the Middle District of North Carolina alleging that Syngenta's and Corteva's crop

---

[3] *Charles Anderson v. Syngenta Crop Protection AG, et al. and Corteva, Inc.*, C.A. 1:22-cv-858 (M.D.N.C.) and *Croscut v. Syngenta Crop Protection AG, et al. and Corteva, Inc.*, C.A. 1:22-cv-899 (M.D.N.C.)

protection loyalty programs violate federal and state antitrust laws.[4] The FTC Action is also before Judge Schroeder. The FTC Action is not subject to this motion.

The Actions are all in their incipient stages and no substantive rulings have been made. As set forth below, coordination of the cases at this early stage of the Actions is appropriate, and the Southern District of Indiana is an appropriate transferee district.

### III. ARGUMENT

#### A. Transfer of the Actions to One Court for Coordination or Consolidation is Appropriate Under 28 U.S.C. § 1407.

Transfer is appropriate "[w]hen civil actions involving one or more common questions of fact are pending in different districts," and the Panel determines that "coordinated or consolidated pretrial proceedings … will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). *See also In re Nifedipine Antitrust Litig.*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003). Coordination or consolidation of multidistrict litigation serves to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary"); *In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (same). Consolidation is particularly important in multidistrict class action

---

[4] *Federal Trade Commission, et al. v. Syngenta Crop Protection AG, et al. and Corteva, Inc.,* C.A. No. 22-cv-828 (M.D.N.C.) (the "FTC Action").

litigation to avoid the "pretrial chaos in conflicting class action determinations which Section 1407 was designed to make impossible." *Plumbing Fixture Cases*, 298 F. Supp. at 493.

Here, there is no question that the crop protection private class cases actions pending in both Districts involve common questions of fact that are central to every Plaintiff's and class member's claims, namely the Defendants' adoption and implementation of their loyalty programs and their effects on competition from generic products. The first condition for transfer under § 1407(a) is therefore satisfied. Moreover, consideration of the relevant convenience factors suggests strongly that coordinated or consolidated pretrial proceedings will promote the orderly and efficient adjudication of these Actions and enhance the convenience of the parties. Accordingly, the second requirement for transfer is also met.

### 1. The Actions Involve Common Facts.

Consolidation or coordination of actions involving common factual questions can avoid needless replication of pretrial proceedings, even here where the litigation is pending in only a limited number of districts. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) (dismissing arguments about the small number of districts as "not persuasive"). Notably, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

Here, all of the Actions (and any tag-along actions that might be expected to follow) will require discovery and factual determinations about the creation, implementation, purpose, and

effect of the loyalty programs used by Syngenta, Corteva, and BASF with major U.S. distributors and retailers. All of the Actions seek class action status based in part on these central common factual questions, although the overlapping class definitions and periods are not identical. Coordination of the Actions by one judge would advance the purposes of Section 1407 by placing all Actions in "th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues; and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *In re Insurance Brokerage Antitrust Litig.,* 360 F.Supp.2d 1371, 1372 (J.P.M.L 2005); *see also In re: Checking Account Overdraft Litig.*, 626 F.Supp.2d 1333, 1335 (J.P.M.L. 2009) (same). The numerous and material common questions of fact implicated in the Actions weigh heavily in favor of consolidation and coordination.

### 2. Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.

The Manual for Complex Litigation suggests four factors to consider when determining whether transfer will enhance the convenience of the parties and promote the just and efficient conduct of actions: (1) the elimination of duplicative discovery; (2) he avoidance of conflicting rules and schedules; (3) the reduction of litigation cost; and (4) the conservation of the time and effort of the parties, attorneys, witnesses, and courts. *Manual for Complex Litigation (Fourth)* § 20.131, at 219.

Now before the Panel are ten pending Actions in two Districts, and additional cases are likely to follow. Each action involves the same questions of fact regarding Defendants Syngenta's and Corteva's loyalty programs and their effects on pesticides containing six active ingredients used in crop protection products. That the Indiana Plaintiffs also sued BASF alleging

that its loyalty program was illegally exclusionary regarding four active ingredients used in pesticides, named two distributors/retailers as Defendants—Helena and Nutrien—and allege illegal conduct by Syngenta in connection with an additional four crop protection product active ingredients does not diminish the appropriateness of centralization.

Each case has as its focus the manufacturer Defendants' loyalty programs with major distributors and retailers. Three major distributors/retailers have been named as Defendants in the actions filed in the Southern District of Indiana and the others have been identified as a key subject of third-party discovery in all other actions. This counsels in favor of transfer. *See In re Bank of America California Unemployment Benefits Litig.*, 544 F.Supp.3d 1366, 1367 (J.P.M.L 2021) (ordering transfer because "EDD is a named defendant in one action and has been identified as a key subject of third-party discovery in all other actions").

Transfer for coordinated or consolidated proceedings in the civil crop protection loyalty program antitrust class action cases is therefore appropriate because there are identical questions of fact regarding the creation, use, and effect of the loyalty programs that will not differ from one case to another. There will be common discovery with respect to each Defendant across all the cases. Moreover, there undoubtedly will be non-party discovery sought from major distributors and retailers if they are not brought into the Actions as parties. It would be inefficient and more costly for such discovery to take place more than once. Further, an MDL proceeding would eliminate the possibility of inconsistent decisions on discovery issues.

All of the Actions are asserting federal antitrust claims against each of the Defendants based on the same set of common facts on behalf of nationwide classes. It would be most efficient for one court to consider and decide the procedural and substantive legal issues common to the cases, such as whether the plaintiffs' complaints state claims upon which relief can be

granted, class certification, and summary judgment, as well as myriad other issues that will arise. Having one court decide these issues eliminates any potential for inconsistent rulings concerning the same loyalty programs. *In re: National Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig*, 24 F.Supp.3d 1366, 1367 (J.P.M.L. 2014) ("The actions assert putative nationwide classes that, while not identical, overlap significantly. Centralization thus will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary"). As described above, the Actions allege similar but not identical class definitions and class periods. The presence of overlapping class definitions also supports transfer of the Actions to one court. *In re Cement and Concrete Antitrust Litig.*, 437 F. Supp. 750, 752 (J.P.M.L. 1977) ("since duplicating or overlapping classes are sought in most of the actions, transfer to a single district is desirable in order to avoid the possibility of inconsistent class determinations."); *In re Sugar Industry Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists").

    **B.**    **The Southern District of Indiana is the Appropriate Forum for Centralization of the Crop Protection Loyalty Program Antitrust Cases.**

Transfer to the Southern District of Indiana and Judge Young is warranted. The Southern District of Indiana is a convenient venue for all the parties in the actions. Indiana is in the corn belt. The first filed class action antitrust loyalty program case is before Judge Young. Defendant Corteva is headquartered in Indianapolis, where Judge Young has chambers and which has a

major airport (IND) easily accessible from all parts of the United States.[5] The other Defendants are either located in Europe (Germany, Switzerland) or spread throughout the United States (Colorado, Tennessee, Indiana, North Carolina, and New Jersey). Accordingly, the Southern District of Indiana is a convenient location for the parties.

By contrast, the Middle District of North Carolina Actions are pending before the Honorable Thomas D. Schroeder, whose chambers are located Winston Salem, North Carolina. The closest airport to Winston-Salem is Piedmont Triad International Airport (GSO), which is about twenty-three miles from Winston-Salem and has relatively limited direct service.[6]

Moreover, the Indiana Plaintiffs are confident that the Actions would be ably managed by Judge Young, an experienced MDL jurist who has presided since 2014 over *In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation*, MDL 2570. Transfer of these Actions for pre-trial coordination by an experienced MDL jurist would be in accord with the purposes of Section 1407 and promote the efficient resolution of the Actions. *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 289 F.Supp.3d 1332, 1334 (J.P.M.L. 2018) (transferring cases to district where presiding judge was "an able jurist with prior MDL experience").[7]

---

[5] IND is ranked number 36 in scheduled flights and 45 in domestic passenger traffic nationally. https://www.transtats.bts.gov/airports.asp?20=E&Nv42146=VaQ&Nv42146_anzr=V0qvn0n21yv5,%20Va:%20V0qvn0n21yv5%20V06r40n6v10ny&pn44vr4=SNPgf

[6] GSO is ranked number 85 in scheduled flights and 104 in passenger traffic nationally. https://www.transtats.bts.gov/airports.asp?20=E&Nv42146=Tfb&Nv42146_anzr=T4rr05o141/Uvtu%20c1v06,%20aP:%20cvrqz106%20g4vnq%20V06r40n6v10ny&pn44vr4=SNPgf

[7] It is common for the Panel to assign more than one MDL to a judge. For example, Judge Martinotti is the MDL judge in *In re Allergan Biocell Textural Breast Implant Products Liability Litig.*, MDL No. 2921 (D.N.J.) and *In re Elmiron (Pentosan Polysulfate Sodium) Products Liability Litig.*, MDL No. 2973 (D.N.J.). Similarly, Judge Battani was the MDL judge in *In re Automotive Parts Antitrust Litig.*, MDL No. 2311 (ED Mich.), which started out as a single

The *Jenkins* case, pending before Judge Young in the Southern District of Indiana, was the first filed private crop protection loyalty program class action. The Indiana Plaintiffs' cases bring the total to eight crop protection loyalty program class actions currently pending in that District. These factors also favor centralization in the Southern District of Indiana. "Centralization of litigation in the Southern District of Indiana, with regard to three actions involving abusive tax shelter, was necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve resources of the parties, their counsel, and the judiciary, where actions involved common questions of fact, centralization would serve convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, and Southern District of Indiana had first-filed action, support of a common defendant, and resources that litigation was likely to require." *In re Cobra Tax Shelters Litig.*, 408 F.Supp.2d 1348, 1349 (J.P.M.L.2005).

Finally, although the FTC Action is pending in the Middle District of North Carolina, that fact is not dispositive given the other factors that favor transfer of the private cases to the Southern District of Indiana. The Panel has historically transferred private actions to the most appropriate and convenient district notwithstanding the pendency of government proceedings in a different district. *See, e.g., In re Hydrogen Peroxide Antitrust Litig.,* 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) ("We acknowledge the grand jury proceedings in the Northern District of California; however, on balance, we are persuaded that the Eastern District of Pennsylvania is a preferable transferee forum for this litigation. The Eastern District of Pennsylvania has 1) the

---

product MDL—*In re Wire Harness Systems Antitrust Litig.* —and then grew to encompass dozens of separate actions brought by direct and indirect purchasers of a variety of automobile parts under the *Automotive Parts Antitrust Litig*ation umbrella. Judge Tunheim has three MDLs in the District of Minnesota.

majority of pending actions; 2) the support of plaintiffs in several potential tag-along actions pending in both districts; 3) the endorsement of all responding defendants; and 4) a nexus to the litigation given the presence of two of the largest domestic producers of hydrogen peroxide—both of which are named as defendants—within blocks of the federal courthouse in this district"); *In re Elec. Carbon Prod. Antitrust Litig.,* 259 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) ("We acknowledge the government investigation and the federal grand jury proceedings in the Eastern District of Pennsylvania; however, on balance, we are persuaded that the District of New Jersey is a preferable transferee forum for this litigation").

Indeed, the pendency of the FTC Action in the Middle District of North Carolina has no effect on this MDL proceeding, and that action is not subject to the MDL statute. 28 U.S.C. Section 1407(g). As the Indiana Plaintiffs have advised the FTC, they intend to fully cooperate with the FTC and State Plaintiffs regardless of whether the private civil cases are situated in the Southern District of Indiana or the Middle District of North Carolina. That cooperation is not dependent on where the venue for the civil cases lies. The Indiana Plaintiffs' position is that the FTC action should proceed separately and expeditiously and should not be affected by events in the civil cases, as Defendants are now trying to do. *See* FTC Case Dkt. No. 56.

## IV.  CONCLUSION

All the requirements for transfer under §1407 of the crop protection loyalty program class actions are satisfied in this case. Therefore, the Indiana Plaintiffs respectfully request that the Panel centralize the crop protection loyalty program class action cases in the Southern District of Indiana before the Honorable Richard L. Young.

Dated: November 22, 2022

Respectfully submitted,

/s/ William E. Hoese
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  215-238-1700
Fax:     215-238-1968
whoese@kohnswift.com

Michael L. Roberts
Dr. Kelly A. Rinehart
ROBERTS LAW FIRM, PA
1920 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (501) 952-8558
mikeroberts@robertslawfirm.us
kellyrinehart@robertslawfirm.us

Michael D. Hausefeld
James J. Pizzirusso
HAUSEFELD LLP
888 16th Street, N.W.
Suite 300
Washington, DC 20006
Telephone: (202) 540-7200

Michael P. Lehmann
HAUSEFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA  94111
Telephone: (415) 633-1908

Irwin B. Levin
Richard E. Shevitz
Scott D. Gilchrist
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
sgilchrist@cohenandmalad.com

Randall B. Weill
Gregory P. Hansel
Michael S. Smith
Elizabeth F. Quinby
PRETI, FLAHERTY, BELIVEAU
& PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
rweill@preti.com
ghansel@preti.com
msmith@preti.com
equinby@preti.com

Francis O. Scarpulla
Patrick Clayton
LAW OFFICES OF FRANCIS O. SCARPULLA
fos@scarpullalaw.com
pbc@scarpullalaw.com
3708 Clay Street
San Francisco, CA  94118
Telephone: (415) 751-4193

Attorneys for Southern District of Indiana Plaintiffs Bradley Day Farms; Chuck Day Farms; Danny Day, Jr. Farms; Danny Day, Jr. & Son Farm Partnership; Shelby Farms, LLC; Hanna Farms, LLC; Choctaw Farms, LLC; G&P Farms Partnership; M and M Farms Partnership; Brick Farms, Inc.; Scott Day Farms; and HYS Farms, LLC